UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK           23-cv-05656 -EK-RML

Joshua Adam Schulte,                    23-CV-
                        Plaintiff,

        — v —
                                        New Complaint

David Denton Jr., Michael Lockard, Sean
Collins, Catherine Hibbie, Vincent Lai, United
States of America, and Unknown Others,
                        Defendants.

Plaintiff Joshua Adam Schulte alleges as follows:

## I. NATURE OF ACTION

1. Defendants blatantly ignored a Court Order, limited consents, and the Fourth Amendment to engage in deliberate deceitful misconduct, falsify evidence, fabricate evidence, and perpetrate a fraud on the courts with the sole intention to violate the Constitution and deprive Mr. Schulte of his rights.

2. Individual defendants are liable under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) ("Bivens") and the United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346.

3. Mr. Schulte suffered the loss of property, loss of irreplaceable work product, loss of current and ongoing civil litigation, and substantial pain and suffering due to the Defendants' actions.

## II. JURISDICTION AND VENUE

4. This is a civil action seeking monetary relief under Bivens and the FTCA pursuant to 28 USC § 2674. The Court has jurisdiction in this action pursuant to Bivens and 28 U.S.C. §§ 1391(b)(2), 1402(b).

5. Venue is proper in this district because "a substantial part" of the underlying events took place at the Metropolitan Detention Center (MDC) in Brooklyn, New York located within the Eastern District of New York. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353 (2d Cir. 2005). While several of the unlawful searches were executed in the Southern District of New York, the most critical and substantial unlawful searches were executed in the Eastern District.

## III. PARTIES

6. Plaintiff, Joshua Adam Schulte, has been detained at MDC since October 2021.

7. Bivens Defendants in this civil action include federal prosecutors Michael D. Lockard and David W. Denton, Jr., who retain neither absolute nor qualified immunity since they acted both as police in conducting a warrantless search and seizure and as witnesses and advisors in assisting the FBI falsify and fabricate search warrants; FBI Agents Sean Collins, Catherine Higbie, Vincent Lai, and Unknown Others who assisted in the falsification, fabrication, and fraud centered in their sworn search warrant affidavits; Unknown FBI agents, USAO personnel, technical support staff, and any other unknown individuals who participated in the unlawful searches resulting from the unconstitutional warrants and searches.

8. FTCA Defendant United States and its constituent part and instrumentality the FBI, USAO, DOJ, BOP, MDC, and unknown others.

## IV. STATEMENT OF FACTS

A. June 3, 2022: First two warrantless searches

9. Approximately a week before trial was to begin in United States v. Schulte, 17 CR 548 (JMF), MDC staff dropped and damaged Mr. Schulte's laptop. See U.S. v. Schulte, Dkt. 838.

10. Standby counsel immediately purchased a new laptop, but did not have the technical resources to physically swap the old laptop hard drive containing Mr. Schulte's work product and trial strategy into the new laptop, so requested a hearing before the presiding judge.

11. At a June 3, 2022 conference, the government offered to perform a physical hard drive swap from the damaged laptop into a newly purchased laptop so that trial need not be delayed.

12. Mr. Schulte consented to this "assistance" on the strict conditions that the government only perform the physical swap, not power on the laptop or conduct any searches, and notify no members of the trial team about any incidental discoveries.

13. Judge Furman summarized this limited consent on the record: (6/3/22 Tr. at 110.)
"OK. I'm guessing his consent may be contingent on this. I assume it goes without saying that the contents would not be viewed by anyone, but certainly not by anyone associated with the trial team in any way, shape or form?"

14. The government concurred; the federal prosecutors Denton and Lockard, acting as police, physically took possession of Mr. Schulte's laptop, and as witnesses as well as police, witnessed Mr. Schulte's strict consent, the Court's firm instruction, and were singularly responsible for relaying and complying with these instructions.

15. Specifically, the government was to ① not power on the laptop, ② only perform a swap: physically remove the old laptop's hard drive, then

physically replace the new laptop's hard drive with the old, ③ not conduct ANY search, and ④ not alert the prosecutors to any incidental discoveries; the prosecutors, acting as police and witnesses, were to convey these instructions to technical staff and ensure compliance.

16. Upon receipt of the laptop the government immediately violated all four conditions by: ① powering on the laptop, ② searching the BIOS, ③ logging into the laptop, ④ searching the laptop, and ⑤ notifying the prosecutors and trial team of their purported findings: an unprivileged BIOS password and a small encrypted drive on the laptop; this warrantless search executed by Defendants Lockard, Denton, and Unknown others constitutes the first Bivens claim in this case.

17. The government then lied to the judge, asserting that the laptop was potentially compromised by this "unauthorized" unprivileged BIOS password. However, this unprivileged BIOS password was setup with the laptop and could not be used to modify BIOS settings since it was an unprivileged account; the government knew this not only because they setup the laptop, but also because they were able to log into the BIOS with their own unchanged administrative BIOS password.

18. Furthermore, the government misled the judge since the BIOS was entirely irrelevant because they had physically disconnected and disabled the wifi component — thus even if somehow enabled by software through the BIOS it would never function due to the disabled hardware.

19. Based on these "discoveries" the government requested the Court compel Mr. Schulte to turn over his password so they could further search the laptop and ensure the laptop's disabled wifi and compliance with BOP Policy. It was not necessary to do so since the government need only check the wifi hardware was still disabled, and at most, check the BIOS with their administrative password unknown to Mr. Schulte — which they already verified.

20. The following discussion took place on the record (6/3/22 Tr.) (at 175-178):

LOCKARD: "So if we get the correct passwords, they will be able to confirm or reset the security settings so that the laptop can go back to the MDC with Mr. Schulte."

COURT: "The suggestion being that Mr. Schulte altered the bios settings, whatever that may be?"

LOCKARD: "Your Honor, we are making no inferences. He's had the laptop a long time. They would like to reconfirm the configuration."

COURT: "... I certainly agree, if the BIOS configuration is not what BOP and protective order requires, then that should be conformed to what it does require, without intimating who did what. Bottom line is, first step is to get access to the computer. Hopefully we can resolve it here now."

LOCKARD: "Yes. Our goal is to make sure it is compliant, get it fixed, back to Mr. Schulte. If he writes down the password, I'll hand it back to the paralegal to take to the IT Department."

21. This warrantless search executed by the Defendants Lockard, Denton, and unknown others, based entirely upon poisons fruit from the first warrantless search, constitutes the second Bivens Claim in this case.

22. The hearing proceeded, the government searched and verified that the BIOS settings were unmolested, the wifi component was still physically disconnected and the laptop fully complied with BOP Policy — and was subsequently returned to Mr. Schulte.

B. Subsequent fraudulent searches based on the first warrantless search

23. During Mr. Schulte's trial in which he was accused of computer hacking and theft of source code, Mr. Schulte intended to expand upon counsel's stratagem at the first trial to demonstrate that the filetimes of the backups of CDN

Source code allegedly stolen by Mr. Schulte could have easily been Modified. This line of questioning was pursued but the related defense exhibits 1210 and 121b containing boilerplate windows code as a demonstrative, could not be admitted at trial. Mr. Schulte received assistance from his technical experts.

24. After trial, Defendants Denton, Lockard, and the United States willfully decided to violate the Fourth Amendment and seize Mr. Schulte's laptop to prevent him from finishing his Rule 29/33 motion, obstruct his other civil litigations, prevent him from assisting in his own defense, and cause him emotional distress. The government knew it could violate Mr. Schulte's Fourth Amendment right with impunity, conduct a general search, and hope to find anything incriminating as there was no downside or disincentive from doing so.

25. On July 26, 2022 Defendant Sean Collins falsified evidence, fabricated, and perpetrated a fraud on the court by swearing out an affidavit in the Eastern District of New York that was signed the next day by Magistrate Chark Cheryl Pollak. 22-MJ-798.

26. The illegal search warrant contained numerous false, deliberately fabricated fraud, including inter alia, that "the bootup BIOS login screen was for a user account which was not created by IT staff" (II.A.6.t.iii. at 13); "In order to create a user BIOS account, the administrator account likely would have to be accessed, indicating that Schulte was able either to crack or to bypass the administrator password." Id.; Many Night probably But of course, as the government knew and confirmed on June 3, 2022, the unprivileged account was setup for Mr. Schulte by the government, it could be configured without access to the administrator account, the administrator password was not changed — indicating that Mr. Schulte had not accessed it since he did not know the password — the BIOS logs showed there was no change to the BIOS, and most critically THE BIOS WAS IRRELEVANT since the physical wifi hardware component was PHYSICALLY DISCONNECTED.

P. 7/23

27. The worst fraud contained in the illegal search warrant was Defendant Collins' false testimony that "[I]n light of the instructions IT staff received about limiting review of the Subject Devices to restoring operability, IT staff did not review whether BIOS settings for the Subject Device had been changed or whether the wireless capability had been reconnected to the motherboard" — which is in stark contradiction with the statements of Defendant Lockard and the Court's Order to ensure compliance, as well as the reality that the government absolutely performed these checks and only returned the laptop after guaranteeing compliance — see, Supra ¶¶ 9-22.

28. Moreover, Defendant Collins failed to explain the insurmountable hurdles necessary to "reconnect" the wifi component to the motherboard: special screwdrivers, a soldering iron, solder, knowledge of soldering, knowledge of the motherboard, knowledge of the specific wifi chip — an impossibility; but also all of Mr. Schulte's movements and actions are monitored and recorded 24 hours a day, 7 days a week.

29. Defendant Collins' assertions about the encrypted drive are entirely irrelevant given that the government knew about these drives since 2018, but never once complained or brought the issue before the judge — not even on June 3, 2022 did the government demand the deletion of this drive or assert it violated any laptop rules.

30. The government executed this illegal search warrant on the 27th of July through unknown defendants. The compilation of the fraudulent, illegal search warrant and its execution constitute the third Bivens claim.

31. Upon discovering that the wireless component was still disconnected, the government should have immediately halted its search since it was not possible for the computer to connect to the internet with a physically disabled wifi component; the history of the BIOS settings also demonstrated

P. 8/23

that it was not possible that the laptop was ever connected to the internet. The government's decision to continue searching the laptop notwithstanding the technical impossibility associated with the search warrant's alleged offenses and probable cause constitute the fourth Bivens claim against unknown searching Defendants.

32. The government's decision to then conduct a general search and search the entire laptop for evidence of any crime, including reviewing Mr. Schulte's files including pictures and videos, constitutes the fifth Bivens claim by unknown searching Defendants. The government has nothing to lose by violating the Fourth Amendment and executing a general warrant — if they can find evidence of any possible crime, they can then block Mr. Schulte from ever getting another laptop, destroy his reputation and credibility before the presiding judge, and achieve total domination and victory over their adversary — even if later found unconstitutional, the damage is already done; there is no downside or disincentive.

C. Subsequent searches based on alleged child pornography

33. On September 23, 2022 Defendant Catherine Hygbie filed an illegal search warrant to search the seized discovery laptop for evidence of child pornography purportedly based on the discovery of child pornography pictures and videos. However, the only pornographic pictures and videos on the laptop were pictures and videos of lawful adult pornography produced and provided to Mr. Schulte by the government in U.S. v. Schulte, 17 CR 548 (JMF). The entirety of the affidavit is fraudulent and constitutes the Sixth Bivens claim; it also failed to notify the courts that the laptop could not access the internet — the underlying original "probable cause" — as a technical impossibility. 22 Mag 7760 (SDNY) signed by Judge Furman.

P.9/23

34. On October 4, 2022 Defendant Vincent Lai filed an illegal search warrant in the EDNY to seize Mr. Schulte's discovery drives. 22-MJ-1071 signed by Magistrate Judge Robert Levy. In addition to confirming Defendant Higbie's illegal, fraudulent search warrant, defendant Lai falsified and fabricates evidence throughout her warrants including but not limited to, claiming that "Schulte appears to have manipulated the BIOS of the Schulte laptop in a manner that could allow him to overcome the "air gap" of that computer and re-enable wireless service." The BIOS was never modified, nor could it enable the wireless service since the wireless component was physically disconnected. Defendant Lai knew these statements were a lie and a fraud. Furthermore, Lai provided no evidence or probable cause to seize and search documents. This constitutes the seventh Bivens Claim.

35. The government's execution of the illegal 10/4 search warrant was also unconstitutional in that the unknown agents went beyond the terms of the search warrant and seized three hard drives outside the scope defined as "cell 601, unit K-84." Instead, the agents searched the law library and Lieutenant's offices and seized three additional drives — which the government also failed to provide a receipt for, pursuant to Fed. R. Crim. P. 41(f)(1)(C). The seizure of the notebooks and paper documents were also not predicated on probable cause or the establishment that Mr. Schulte even possessed such items. This constitutes the eighth Bivens Claim — which was personally witnessed by Mr. Schulte and recorded.

36. Defendant Lai likewise filed an illegal search warrant in the Southern District to seize Mr. Schulte's discovery items at the courthouse SCIF. Lai repeated lies from her previous affidavit and the two prior affidavits as well as new fabrications and falsification of evidence. Defendant Lai makes much of an "incident" in which a drive was connected to the child porn laptop in the SCIF — but this "incident" took place AFTER the laptop

P. 10/23

was seized; hence could not have been done to "steal" child porn. Moreover, Defendant Lai neglects the fact that the use of thumbdrives was authorized in the SCIF, and that it was not Mr. Schulte who connected the drive, but it was him who notified the FBI of the drive. This search warrant, 22 Mag 8037 (SDNY) signed by Judge Furman, constitutes the and its execution by Unknown Defendants constitutes the ninth Bivens claim.

37.  Finally, Defendant Lai filed yet another fraudulent search warrant on October 7, 2022 in the EDNY, 22-MJ-1078, signed by Magistrate Marcia M. Henry, seeking to search the three drives they illegally seized when executing the MDC warrant, supra ¶ 35. This ex post facto warrant does not cure the illegal seizure from three days prior nor did it establish probable cause. This constitutes the tenth Bivens claim.

38.  In December 2022 the defense was finally provided access to the discovery laptop. The forensics indicate that, when the government first setup the laptop in 2021, they connected a drive containing the child pornography discovery; although none of these files were copied to the discovery laptop, the connection of the drive triggered the operating system to automatically generate thumbnails of all the child pornography and store it in the hidden, system database file thumbcache.db. Mr. Schulte could not possibly know this, access this hidden, system, database file, or knowingly possess these files. No actual pictures or videos of child pornography were contained on the laptop, the seized discovery drives, or the seized SCIF devices. As a result, the government cannot nor will it prosecute Mr. Schulte for the violation of any law as no violation occurred.

D. 41(g), Additional Searches, and More expanded general warrants
39.  Mr. Schulte originally began preparing for a Bivens suit for the two warrantless searches following trial in July; the seizure of

the laptop postponed and increased the claims.

40. Mr. Schulte moved for return of the laptop in the Southern District of New York, but the government argued that the Southern District was the wrong district to make that motion — it had to be in the Eastern District pursuant to Fed. R. Crim. P. 41(g). See U.S. v. Schulte, 17 CR 548 (JMF), Dkt. 927 on 8/4/22 ("...the search warrant was obtained in a different district."), Dkt. 946 on 9/20/22 ("... obtained from a different court.").

41. Accordingly, Mr. Schulte filed a complaint in the EDNY on September 23, 2022, Schulte v. United States, 22-CV-5841-EK-RML. Mr. Schulte first sought production of the search warrants before he could raise Bivens claims, and the unsealing of the illegal warrants. Once he was in possession of the warrants, Mr. Schulte moved to amend the complaint on February 16, 2023, Dkt. 15-1. He also filed for return of property pursuant to Rule 41(g). Dkt. 11. The government moved to dismiss the 41(g) motion arguing that the civil equitable relief was not available since Mr. Schulte already tried to obtain relief in the Southern District — despite the government's argument in the Southern District that Mr. Schulte had no standing and had to file in the Eastern District — which is the very definition of judicial estoppel; and regardless, Mr. Schulte did not have standing to make any argument in the Southern District — which does not count against him or nullify civil equitable relief. But Judge Komitee erroneously agreed with the government, dismissed the case without prejudice, and never ruled on the pending amended complaint — the Bivens actions. Hence this new action.

42. While the 41(g) motion was ongoing, the government was not actually searching any of the material or conducting any investigation whatsoever despite its lies and fraud before Judge Komitee; it knew that it was responsible for the Child Porn thumbnails, so had no

P.12/23

reason to continue searching or conducting any investigation. Moreover, it had already achieved its goals— Judge Furman declared Mr. Schulte guilty of possessing child pornography on the discovery laptop without any hearing and banned Mr. Schulte from a laptop, the SCIF, or assisting in his own defense. The government won: Mr. Schulte was presumed guilty and they need not take any further action.

43. After Mr. Schulte began protesting his innocence, the government decided to pretend to still be investigating him. ~~Both~~ On March 28, 2023, long after the government knew the truth about the BIOS, wifi component, and child pornography thumbnail images, and long after Mr. Schulte notified the government of its fraud in both his ~~amended~~ proposed amended complaint and 41(g) motion, Defendant Lai filed yet another fraudulent search warrant— but this time to actually conduct searches of all the seized materials since it never actually searched any of the seized devices: "As described below, the searches of the Subject Premises did not take place within 14 days after these warrants were issued. The FBI is now prepared to begin searching the Subject Premises and, accordingly, this application seeks new warrants." 3/28/23 search warrant, JAS-028382 at 390, IA3 at 3, signed by Judge Furman. Defendant Lai attached all fraudulent warrants and sought new searches without updating the Judge about the truth. This warrant and its execution constitutes the eleventh Bivens claim.

44. Defendants Lockard and Denton then notified Judge Furman at several conferences and by letter, that they ~~wished~~ decided to expand the original searches to general searches for evidence of any crime, and specifically, to search for classified information and violations of the Espionage Act despite no probable cause nor authorization to do so. This expansion and general search by Lockard, Denton, and unknown defendants constitutes the twelfth and final Bivens claim.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

45. Mr. Schulte has exhausted all available administrative remedies prior to filing this civil complaint. Mr. Schulte originally filed grievances on the day the laptop was seized — for all three grievances at that time — the two unlawful warrantless searches at the courthouse and the seizure of the laptop. MDC notified Mr. Schulte that the BOP had no control of events or actions outside the MDC or BOP spaces, and that the FBI had seized his laptop pursuant to a "lawful" warrant, which the BOP also could not control. Thus his BP-8 was returned without a response, and he was not permitted the next BP-9 form. Indeed, all actions herein concern extra-BOP events for which neither the MDC nor the BOP had control or any ability to grant relief for Mr. Schulte's grievances. All procedures were followed anyway in the abundance of caution. Accordingly, all available remedies were exhausted.

## VI. DAMAGES, ~~AND~~ LOSSES, AND INJURIES

### A. Irreparable harm to criminal case

46. The loss of the laptop and work product prevented Mr. Schulte from working on his Rule 29 and Rule 33 motions, Fed. R. Crim. P., on the espionage trial. As a result, he was unable to file a completed motion, and unable to file any reply, resulting in substantial irreparable harm.

47. The loss of the laptop also prevented Mr. Schulte from assisting in his own defense at the upcoming child porn trial since his discovery could not be reviewed on the BOP discovery review computer as it consisted of substantial forensic images and other file types requiring special software to review.

48. The loss of 6 years' worth of work product also constitutes substantial irreparable harm — Mr. Schulte could no longer contribute

P.14/23

to his defense, and all the years he spent creating documents and other work product from analysis of his discovery was gone in a flash.

49. The loss of the laptop and work product also prevented him from representing himself. The 6 years' worth of exhibits, forensic analysis, demonstratives, motions, direct and cross-examinations of witnesses, and ability to create more in the future were instantly destroyed. Furthermore, Mr. Schulte could not review discovery or re-create this work product without a laptop. As a result he was forced to abandon his self-representation.

50. Mr. Schulte also lost his work product for his appeal and the ability to represent himself on appeal. He had already written his appellate brief and spent significant work developing work product for use on appeal—all of which destroyed in an instant. As a result, he was forced to abandon his self-representation on appeal.

51. Without the laptop, Mr. Schulte could not effectively research on the law library or write motions. Due to his physical disability, referenced in detail later, he could not write by hand without excruciating pain, forcing him to either spend ~~months~~ months at a time on single motions or slop together some truncated version. Compare Mr. Schulte's laptop motions with ineffective paper motions.

52. Finally, the worst consequence and most damaging trial-related injury was the government's manipulation of Judge Furman. Before the government's false child porn allegations, Mr. Schulte and Judge Furman held a mutual respect; but the government played Judge Furman for a fool and turned him against Mr. Schulte. Judge Furman not only lost all respect for Mr. Schulte, but was also incited with extreme hatred, bias, and prejudice against Mr. Schulte. Judge Furman did not hold a single hearing, but declared Mr. Schulte guilty based on nothing but

the prosecutors' lies. As a result, Judge Furman did not permit Mr. Schulte a laptop, access to his discovery, or the ability to represent himself; he began acting as a prosecutor, denying all of Mr. Schulte's motions instantly without litigation, and stooped so low as to routinely mock, ridicule, and insult Mr. Schulte to his face. Judge Furman would scream at Mr. Schulte at pretrial conferences and refuse any and all attempts at reason. Compare Judge Furman's demeanor before and after the Child porn false allegations. This was the government's strategy all along and even a finding that the searches were unconstitutional cannot remedy Judge Furman's attitude towards Mr. Schulte. As a result, Judge Furman will crucify Mr. Schulte at sentencing, resulting in substantially increased prison time and irreparable infinite harm.

## B. Pain and suffering

53. As a result of the laptop seizure, Mr. Schulte suffered substantial physical injury because he was forced to write by hand, but had a physical disability that caused excruciating pain to do so. Mr. Schulte notified the court of his disability, but Judge Furman callously disregarded Mr. Schulte's pain and suffering; when unable to complete the Rule 29/33 motion or reply, Judge Furman had no empathy and simply ruled that Mr. Schulte could not reply. Thus, going forward Mr. Schulte had to grit his teeth and bear the ever-worsening pain that MDC medical simply prescribed Tylenol. The typewriter was not an option because it was too expensive to purchase the ribbon and only accessible a few hours each week. As a result, Mr. Schulte suffered substantial, excruciating pain and irreparable harm to his wrist and hand, which are now permanently damaged.

54. The Defendants' actions also caused Mr. Schulte substantial emotional distress resulting in anxiety, depression, and insomnia.

P. 16/23

Mr. Schulte was unable to contribute to his own defense, access his work products, represent himself, conduct legal research, file motions, or tend to any of his civil cases (see later) — resulting in extreme anxiety and emotional distress. The government's fraudulent warrants and repeated lies to judges also contributed significantly to Mr. Schulte's emotional distress as did Judge Furman's sua sponte guilty verdict as a direct result of the government's incessant lies. The mental and emotional suffering was infinite, without any comparison or monetary value.

55. The cognitive decline and mental health crisis also resulted in the BOP's placement of Mr. Schulte in solitary suicide watch for a full week; he had never before been placed on suicide watch.

56. Mr. Schulte also began suffering panic attacks, hypersensitivity, ruminations, cognitive dysfunction, hallucinations, paranoia, hopelessness, lethargy, confusion, emotional breakdowns, and suicidal impulses.

57. Mr. Schulte's injury also extended to his heart where he suffers a congenital defect; the Defendants' actions exasperated Mr. Schulte's heart issues, leading to heart palpitations, dizzyness, temporary reduced eyesight and migraines caused by hypertension, heart arrythmia and even hospitalization after the onset of these symptoms. Mr. Schulte's physical health and well-being suffered significant permanent damage as a consequence of Defendant's actions.

C. Detriment to other litigations

58. Mr. Schulte was no longer able to litigate many of his pending civil actions, review discovery, access his work products or file motions, or engage in any meaningful way.

59. Mr. Schulte could no longer work on Schulte v. Bureau of Prisons et al., 20-cv-2795 (PGG) (GWG) (SDNY)

60. Mr. Schulte could no longer work on 21-CV-4043, 4800, 5061, 5168, 5173, 5213, 5313, 5554, 5722, 5851, 5871, or 6504 (SDNY).

61. Mr. Schulte could no longer amend his complaint in Schulte v. Attorney general of the United States, et al, 19-CV-3346 (SDNY).

62. As a direct result of the Defendants' actions, Mr. Schulte was unable to litigate four appeals in the Second Circuit: 21-2873, 21-3113, 21-3118, and 21-3124, which were all dismissed.

63. Mr. Schulte was also forced to forego many new civil complaints as a result of his inability to write by hand—caused by the Defendants' unlawful seizure of the laptop.

64. Mr. Schulte's existing EDNY cases also suffered from his loss of work product and the laptop; he could only make one paper submission, and therefore had no copies after submission, resulting in substantial harm. In the 41(g) case, 22-CV-5841, Mr. Schulte requested a copy of his 41(g) motion no less than 5 times—but never received it, resulting in his inability to file a reply. Mr. Schulte's inability to effectively represent himself due to the Defendants' actions led inexorably to that case's erroneous dismissal.

D. Injuries and harm continuous, exponential

65. These are only a few examples of some of the harms caused by the Defendants' actions, and do not represent a complete recitation of all damages. Moreover, the harms are continuous, causing ever-cascading and exponential damage that cannot possibly be recorded now. For example, even as this is written, the physical damage to Mr. Schulte's hand increases, forcing him to write with his non-dominant hand; the emotional distress continues, as Mr. Schulte's anxiety, depression, and other symptoms worsen; the government also continues reiterating its lies to the courts and in additional warrants. The total damage cannot be assessed until a verdict or judgment

P. 18/23

## VII. CAUSES OF ACTION

66. Mr. Schulte hereby realleges and incorporates by reference paragraphs 1-65.

### A. Bivens Claims

67. Mr. Schulte is entitled to damages under the Fourth Amendment pursuant to Bivens; these are all unconstitutional searches and seizures.

## FIRST CAUSE OF ACTION

68. The warrantless search of Mr. Schulte's laptop by Defendants Denton, Lockard, and unknown others on June 3, 2022 at the Southern District of New York courthouse.

## SECOND CAUSE OF ACTION

69. The second warrantless search of Mr. Schulte's laptop by Defendants Denton, Lockard, and unknown others on June 3, 2022 at the Southern District of New York courthouse.

## THIRD CAUSE OF ACTION

70. The July 26, 2022 search warrant, 22-MJ-79B (EDNY); the affidavit filed by Defendant Sean Collins, and written with the advice, assistance, and witness testimony of Defendants Denton and Lockard; and the assistance of unknown other defendants; and the execution of this warrant on July 27, 2022 at the MDC by unknown Defendants.

## FOURTH CAUSE OF ACTION

71. The continued search of the laptop despite the physically

disconnected wireless component which definitively proved the "probable cause" in the warrant false, and the ability to commit the alleged crime of possessing contraband in a prison through functioning wifi chip impossible; also despite the pristine BIOS settings; this Fourth Amendment violation was committed by unknown Defendants at an unknown location.

## FIFTH CAUSE OF ACTION

72. The unlawful expansion of the search parameters and subsequent execution of an unlimited, general warrant including searching pictures and videos despite no possible finding of a functioning wifi chip in pictures and videos and notwithstanding the fact that searching any files were unnecessary given the disabled wifi component.

## SIXTH CAUSE OF ACTION

73. The September 23, 2022 search warrant, 22-Mag-7760 (SDNY); the affidavit filed by Defendant Catherine Higgins, written and assisted by unknown other Defendants; and the execution of this warrant by unknown Defendants at unknown locations.

## SEVENTH CAUSE OF ACTION

74. The October 4, 2022 search warrant, 22-MJ-1071 (EDNY); the affidavit filed by Defendant Vincent Lai, written and assisted by unknown other Defendants; and the execution of this warrant by unknown Defendants at the MDC.

## EIGHTH CAUSE OF ACTION

75. The October 4, 2022 search warrant's execution at the MDC

P.20/23

where unknown Defendants seized items beyond the scope of the warrant, including three additional hard drives, CDs, DVDs, and hardcopy notebooks.

## NINTH CAUSE OF ACTION

76. The October 4, 2022 search warrant, 22-Mag-8037 (SDNY); the affidavit filed by Defendant Vincent Lai, written and assisted by unknown other Defendants; and execution of this warrant by unknown Defendants at the SDNY courthouse SCIF.

## TENTH CAUSE OF ACTION

77. The October 7, 2022 search warrant, 22-MJ-1078 (EDNY); the affidavit filed by Defendant Vincent Lai, written and assisted by unknown other Defendants; and its execution by unknown Defendants at an unknown location.

## ELEVENTH CAUSE OF ACTION

78. The March 28, 2023 search warrant, JAS-02B3B2-510 (SDNY); the affidavit filed by Defendant Vincent Lai, written and assisted by unknown other Defendants; and its execution by unknown Defendants at an unknown location.

## TWELFTH CAUSE OF ACTION

79. The expansion of all prior search warrants into general warrants to search any and all seized items for evidence of any and all crimes, particularly to search for classified information and violations of the Espionage Act despite no probable cause or authorization to do so, as identified from the oral record at conferences and written record for U.S. v. Schulte, 17 CR 548 (JMF), by defendants Lockard, Denton, and executed by unknown other Defendants.

P. 21/23

## B. FTCA Claims

80. Mr. Schulte is entitled to damages under 28 U.S.C.§ 1346(b)(1) of the Federal Tort Claims Act (FTCA), consistent with the Act's provision that a person has a remedy under the FTCA when a federal actor commits an act established by a private tort law analogue in the jurisdiction where the wrong occurred. In this case, New York, relying upon New York State law for a person in private analogue for the tort claims alleged under the FTCA.


## THIRTEENTH CAUSE OF ACTION
### (Damages for Malicious abuse of process)

81. The Defendants employed a regularly issued legal process, Search and Seizure pursuant to Fed. R. Crim. P. 41, with the sole intent to do harm without excuse or justification, and in order to obtain collateral objectives outside the legitimate ends of the process — to prevent Mr. Schulte from working on his Fed. R. Crim. P. 29/33 motions, prevent him from reviewing discovery, prevent him from assisting in his own defense or representing himself, and to manipulate and influence Judge Furman — to incite him against Mr. Schulte to crucify him at sentencing and obtain significant prison time for Mr. Schulte; Malicious abuse of process.


## FOURTEENTH CAUSE OF ACTION
### (Damages for Malicious prosecution)

82. The Defendants continued criminal proceedings and initiated new criminal proceedings in at least an impaneling of a grand jury which terminated in Mr. Schulte's favor, for which there was never any probable cause for commencing the proceedings, motivated solely from

P.22/23

Malice — to prevent Mr. Schulte from working on his Fed. R. Crim. P. 29/33 motions, prevent him from reviewing discovery, prevent him from assisting in his own defense or representing himself, to manipulate and influence Judge Furman — to incite him against Mr. Schulte to crucify him at sentencing and obtain significant prison time for Mr. Schulte, and as malicious punishment for Mr. Schulte refusing to falsely plead guilty or agree to cooperate in the government's persecution of Julian Assange; Malicious prosecution

C. Civil Equitable Claim

## FIFTEENTH CAUSE OF ACTION
### (Fed. R. Crim. P. 41(g))

83. Mr. Schulte seeks the return of unlawfully seized property pursuant to Fed R. Crim. P. 41(g) of his laptop, hard drives, CDs, DVDs, notebooks, and all other seized property containing his work product and First Amendment-protected writings, seized pursuant to the unconstitutional searches including the 7/26 and 10/4 warrants.

84. This cause is predicated on Rule 41(g), and cannot be dismissed because Mr. Schulte previously raised the issue in the wrong district, for which the government successfully argued; not only would this violate judicial estoppel, but the proper remedy when a Plaintiff raises an issue in the incorrect district is to transfer the matter to the correct district — not to punish and bar him from any litigation; without standing to raise a claim, there can be no consideration of the merits, and it cannot be considered a "second bite of the apple" to then raise the complaint in the proper district.

P. 23/23

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 24 2023  ★

BROOKLYN OFFICE

## VII. RELIEF

85. Award damages pursuant to Bivens and the FTCA for the damages, losses, and injuries caused Mr. Schulte.

86. Award Mr. Schulte costs, fees, expenses, and other disbursements associated with the prosecution of this complaint and reasonable attorney fees, pursuant to 28 U.S.C. § 2412.

87. Award any such other relief that this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

88. Order the return of property either directly to Mr. Schulte or if he is still incarcerated and not entitled to the property in prison, then to his attorney or family as deemed appropriate as constructive possession pursuant to Second Circuit caselaw.

89. All search warrant affidavits and the June 3, 2022 transcript are hereby incorporated by reference (all are currently sealed).

## IX. CERTIFICATION AND CLOSING

90. I certify this complaint complies with Fed. R. Civ. P. 11 to the best of my knowledge, information, and belief.

91. I agree to provide the clerk's office with any changes to my address where case-related papers may be served.

Dated: Brooklyn, New York
July 11, 2023

Respectfully Submitted,
Joshua Adam Schulte, pro se
Josh Schulte

Josh Schulte #79471054
MDC
P.O. Box 329002
Brooklyn, NY 11232



ATTN: New Civil Complaint
Pro Se Intake Office
U.S. District Court EDNY
225 Cadman Plaza East
Brooklyn, NY 11201
23-79471-054-0712-M01

SWSN